UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| PATRICK E. DULLEN, | ) | CASE NO. 4:05 CV 2002 |
| | ) | |
| Plaintiff, | ) | JUDGE PETER C. ECONOMUS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| CORRECTIONS CORPORATION | ) | AND ORDER |
| OF AMERICA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On August 16, 2005, pro se plaintiff Patrick E. Dullen filed this Bivens[1] action against Corrections Corporation of America, the United States Department of Justice, the United States Marshal Service, Northeast Ohio Correctional Center ("NEOCC") Warden R. Tapia, NEOCC Assistant Warden of Detention J.D. Medlin, and the NEOCC Medical Department. In the complaint, plaintiff alleges that his First, Eighth and Fourteenth Amendment rights have been violated. He seeks compensatory and punitive damages.

### *Background*

Mr. Dullen is currently incarcerated in NEOCC, a private prison owned and operated

---

[1] Bivens v. Six Unknown Agents, 403 U.S. 383 (1971).

by Correction Corporation of America, which houses federal prisoners under contract with the United States Bureau of Prisons.  He indicates that when he came to NEOCC, he had been under a physician's care for ulnar neuropathy, a pinched nerve in his neck, and nerve impingement along the length of his spine.  He states he was initially denied his medication by a nurse but received a dosage after asking to see a Captain.

Mr. Dullen was seen by a physician on July 22, 2005.  During this visit, they discussed his use of Ultram, a synthetic opiate.  The physician indicated that he had prescribed the medication for other inmates but a committee had to review the need for the drug before the prisoner had been able to fill the prescription.  Mr. Dullen questions whether he can receive an acceptable level of care when people who have not examined him can make decisions concerning his health care.  It appears he had not received approval for Ultram at the time he filed this action.  He claims the defendants have been deliberately indifferent to his serious medical needs.

In addition, Mr. Dullen contends that the NEOCC law library is inadequate.  He indicates there are no law clerks and the librarian is too busy and lacks the knowledge to assist inmates with legal research.  He further claims, "It is also necessary to provide indigent inmates paper, pens and envelopes for the purpose of writing and mailing their legal materials."  (Compl. at 4.)  He asserts that this is a violation of the First Amendment.

Finally, Mr. Dullen objects to the inmate grievance procedure.  He claims the prison handbook states that grievances should first attempt to be resolved informally.  He alleges that any time an inmate requests a sick call form, inmate request form or grievance form, he is told there are none available.  He states that any attempt to contact an official directly is met with a threat of placement in segregation.  He indicates that the policy permits prison officials to return grievances

that have been improperly filed. He asserts that the grievance procedure is too cumbersome and violates the Fourteenth Amendment.

### *Exhaustion of Administrative Remedies*

A prisoner must allege and show that he has exhausted all available administrative remedies before filing a civil rights action in federal court to challenge the conditions of his confinement. 42 U.S.C. §1997e; Wyatt v. Leonard, 193 F.3d 876, 878 (6th Cir. 1999); Brown v. Toombs, 139 F.3d 1102, 1104 (6th Cir. 1988), cert. denied, 525 U.S. 833 (1998). To establish that he exhausted his remedies prior to filing suit, the prisoner must plead his claims with specificity and show that he has exhausted his administrative remedies with respect to each allegation against each defendant by attaching to the complaint a copy of the applicable administrative dispositions or, in the absence of written documentation, describing with specificity the administrative proceedings and their outcomes. Knuckles-El v. Toombs, 215 F.3d 640, 642 (6th Cir. 2000). The prisoner must exhaust each specific claim against each defendant named in the complaint to satisfy the exhaustion requirement. See Curry v. Scott, 249 F.3d 493, 504-05 (6th Cir. 2001). In the absence of such particularized averments concerning exhaustion, the action must be dismissed. Id.

Because NEOCC is a private prison, it is difficult to determine on the face of the pleading what grievance procedure is available to the inmates. Title 28 of the Code of Federal Regulations sets forth a four-step grievance procedure for administrative remedies for inmates housed in federal prisons. As the inmates housed at NEOCC are federal inmates, it is likely that they are required to utilize the grievance procedure for federal inmates.

Under Title 28, an inmate initiates the grievance procedure by requesting an Informal Resolution from the prison official whose area of responsibility is most related to the

grievance. 28 C.F.R. § 542.13. If the inmate is dissatisfied with the informal response, or if there has been no response to the complaint, the inmate may file a BP-9 form with the institution staff member designated to receive such requests. 28 C.F.R. § 542.14. If this second step does not provide satisfactory results, the inmate may file an appeal on a BP-10 form to the Regional Director. 28 C.F.R. § 542.15. An inmate who is not satisfied with the Regional Director's response may submit an appeal on the appropriate BP-11 form to the General Counsel. 28 C.F.R. § 542.15. The General Counsel's written response to the inmate's appeal is the final decision on the grievance.

Mr. Dullen has not demonstrated that he exhausted his administrative remedies for each claim he asserts against each defendant. He alleges he "submitted 3 inmate requests and 2 grievances." (Compl. at 4.) He does not state the content of these requests and grievances and does not suggest against whom they were asserted. There is also no indication that he filed grievances with the Regional Director or with the General Counsel.

Even if NEOCC inmates are required to use a grievance procedure other than that which is designated for federal prisoners, the complaint must be dismissed. Mr. Dullen has not set forth allegations describing such a procedure or suggesting that he complied with it. The inmate bears the burden of establishing exhaustion of administrative remedies at the time the complaint is filed. Brown, 139 F.3d at 1104. Mr. Dullen has not satisfied that burden.

Moreover, the United States Sixth Circuit Court of Appeals has adopted a "total exhaustion" requirement for prisoner complaints which fall within the parameters of 42 U.S.C. §1997e. See Bey v. Johnson, 407 F.3d 801 (6th Cir. 2005). Under this rule, a complaint containing both exhausted and unexhausted claims must be dismissed in its entirety for failure to exhaust

administrative remedies. Bey, 407 F.3d at 806-07. The district court no longer has the option of dismissing just the unexhausted claims and proceeding with the claims that have been submitted through the relevant grievance process. Id. Because Mr. Dullen has not demonstrated that he exhausted each of his claims against each of the defendants, or at least attempted to do so, the case must be dismissed in its entirety.

*Conclusion*

Accordingly, this action is dismissed without prejudice pursuant to 42 U.S.C. §1997e. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[2]

IT IS SO ORDERED.

S/Peter C. Economus - 11/14/05
PETER C. ECONOMUS
UNITED STATES DISTRICT JUDGE

---

[2] 28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.